versus Ellume. We would be happy to hear from you Mr. Grosso. May it please the court, I'm Jason Goslin on behalf of Tiber Creek Partners, the impellent in this matter. Tiber Creek Partners filed two lawsuits in the Eastern District of Virginia, its home forum, and it was entitled to heightened deference in its choice of forum. And we're here today because we contend that the district court abused its discretion in dismissing this case based on the doctrine of forum non-convenience. I'm going to spend time talking about the standard because ultimately I think that's what this case turns on and I'm going to talk about how the court applied the various public and private factors and how the court erred and how those factors would not meet the standard if properly applied. Before I do that I want to spend just a moment talking about what these two cases are, what they're about and how they're sort of the same and how they're also a little bit different. Ellume One, that was a breach of contract case. It was between two parties that were both US entities. Tiber Creek Partners is an LLC, it's based in Virginia. Ellume USA is a US based company. They're incorporated in Delaware but they had a Tiber Creek was hired to do some work, some consulting work. It was paid some of its fees, it wasn't paid all of its fees, so it brought a lawsuit in its home form. Ellume Two involved Ellume USA's parent company which is an Australian company and the gist of Ellume Two was a declaratory judgment claim to have an amendment to the first contract declared invalid based on fraud. Tiber Creek intended that that... I'm not entirely clear who you're contracting with. There's one Ellume that headquarters in Australia and another one in Maryland. You've got these different contracts and different agreements and different amendments and everything. Who are you contracting with? The Tiber Creek, our position and it's in our briefs and our complaint, the contract was with Ellume USA. The contract was very clear that Tiber Creek was going to provide consulting services and the payment obligation belonged to the party that received government funding. I don't think there's any dispute that the entity that actually applied for the government funding and received the government funding and paid Tiber Creek the prior fees was Ellume USA. A question on that point. Do you think that the inquiry here is sort of a probabilistic one? So imagine I took this sort of idea that this threshold question in Tiber One, just keep them separate. So in Tiber One there's this threshold question of whether you sued the right entity and if you sued the right entity then the case proceeds and we have a set of circumstances. If you sued the wrong entity the case will be dismissed because you have sued somebody with whom you have no contract. Is the district court and are we supposed to look at that in some probabilistic sense and say we don't have all the evidence but my best guess is that there's 60-40 one way or the other and then I then take those probabilities and run them down to the likely outcomes of what would happen and ask about the convenience and the public and private factors given the likely outcome of this threshold question? I don't think that you get to that question on the forum non-convenience analysis because the the argument was that Tiber Creek sued the wrong party. They also filed a 12b motion saying the complaint should be dismissed because the wrong the the in Ellume One anyway the party to the operative contract was not Ellume USA. That was a 12b argument that they raised that the court never got to. But the forum question I mean we're told by the Supreme Court the forum question is a predictive judgment by the by the district court. What is litigation going to look like? It's by definition making a prediction. What is the litigation going to look like based on the arguments of the parties? It doesn't know what trial is going to look like. I mean nobody knows what trial is going to look like. It's making a predictive judgment. The question I'm asking so that's a predictive judgment about what trial will look like. But we know in Tiber One or at least I can let's accept that there's a 60-40 question at the threshold as to who the right contracting party is. And so it if I look at it in a probabilistic manner that might affect the balance that I have. I'm just asking do I do my predictive judgment assuming you get to trial or do I do my predictive judgment looking through the lens of there's a 40% chance and I'm making up the percentage a 40% chance that your case is dismissed because you sued the wrong counterparty. I don't believe that you look at it in the latter way. Why not? I totally understand that but why not? I mean because the inquiry on a forum non-convenience analysis according to De Federico is whether the plaintiff's forum the chosen forum in this case it was the home forum it's entitled to that choice is entitled to heightened deference. So the question is whether the forum is not just inconvenient but vexatiously inconvenient. I understand the bar's high. That's a bar's high argument. Right. What I'm asking is when I look at the convenience of the evidence right one of these private factors right when I look at the convenience the evidence if the case goes to trial I might have one view but if the case is dismissed because you've sued the wrong counterparty I don't have any evidentiary problems right. I agree with that. So then the question is am I looking and I'll move off of this right but it is there am I looking at those two probabilities as a threshold matter or am I ignoring that that possibility whatever it is that that your case is going to go away without looking at any of it. Yes I mean the court is directed by the precedents to look at the public and private factors which do look at to some degree how this case will take form once it goes to trial. I and I there was a totality of the circumstances inquiry it well it is a totality of the I mean all of the court is directed to look at all of the public and private factors. It's a it's a totality of the circumstances inquiry but it's a very very high bar to dismiss. But one thing I'm thinking you know this is a battle of presumptions you have the presumption that you bring forward about not about the plaintiff gets to choose the forum and then there's the countervailing presumption that we're here under an abuse of discretion standard and that a certain deference is due there so you've got these clashing presumptions. And the question I have is I can't I can't think of very many cases where we have reversed district courses district courts under an abuse of discretion standard where they undertook a totality of the circumstances inquiry. Most of the abuse of discretion standards or a great many of them concern an era of law which is automatically abuse of an abuse of discretion. But where the district court inquiry was one of the totality of the circumstances then we've been very reluctant as an appellate court to reverse. And I say that because that might have a particular applicability here and that is we do not want parties thrashing around on preliminary issues without the idea is to get to the merits and resolve the merits as soon as possible. And if we have them thrashing around on a preliminary issue like forum non-convenience and everything that simply post postpones things and it runs up the expense. Both of those things. And I don't understand why we wouldn't credit or go out of our way to credit what the district court did in the discretionary call that the district court made where it's made under a totality of the circumstances framework. In that light it does not show how I can see how the district court ran off the rails here. I mean he says that I can't control the discovery and in Australia and the witnesses are in Australia and the documents are in Australia and it looms headquarters in Australia and there's an Australian bankruptcy court, a bankruptcy proceeding in which your client participated. And so you know I'm thinking this isn't a district court discretionary ruling that ran off the rails and why we wouldn't I don't understand why we wouldn't back it up because the longer we go on thrashing around with this discretionary issue as I say it takes time it runs up experience it runs up expenses and the bankruptcy estate is mean time the bankruptcy estate is going to be bleeding funds and maybe more attorneys fees but in terms of actually getting this case resolved promptly I don't see how the district court ran off the rails. Your honor in DeFederico the district court looked at all of the factors the witnesses the public and private factors that were raised here all of that was at issue and in DeFederico the court stated that those circumstances and I think they're far more weighty than the circumstances here even still do not override the plaintiff's choice of forum under the the heightened deference standard. This court in DeFederico stated not just the standard but there must be evidence in the record that the court actually applied that heightened deference standard. In our record the to the extent there's any evidence of what standard the court was applying it's some sort of a balancing test we quoted in our brief it's on joint appendix 773 the court stated so this really comes down to understand understand the standard can you can you like pick a factor that you think the district court got most wrong right one of the public or private factors just to give me an example okay witnesses for example in as I see the case all of the witnesses in are in the US they don't apply that that factor doesn't even apply to you a loom one in a loom two yes they would stay with loom one okay so the witnesses is here what else so so that in considering a loom one the district court erred in finding that the witnesses were in Australia or at least predominantly the witnesses were in Australia. The possibility of a stay in based on the Australian proceeding that only applies to the the the company that is the subject of the deed of company arrangement that was a loom limited it was not a loom USA there was no bankruptcy protection available to a loom USA period at all now we of course say that a loom limited wasn't entitled to it either because they didn't go through the chapter 15 bankruptcy process in the US bankruptcy courts in terms of the witnesses for a loom limited De Federico says that that factor the witness factor is to be given little weight in the absence of evidence that those are unwilling or unavailable witnesses. I think the district court listed Richard Hughes and Brian Moeller and Mark Anning and David Green and Paul DeRose and the loom LTVs administrators as witnesses who were in Australia. Yeah and they're under the control of a loom limited they are not unavailable and that factor is only entitled to. It's not the only I mean the Supreme Court De Federico mentioned unwilling witnesses but they were quoting and talking about a standard the Supreme Court said that follows up unwilling witnesses and the cost of bringing willing witnesses right so we can't just look at the what was most important to De Federico we have to look at the entire standard and what's the district court thought was most important here. Well I think what the district court said and what you're saying makes more sense with respect to a loom two it does not apply to a loom one at all those witnesses have nothing to do with a loom one. The as we see it and as we say it in our briefs that the standard is very high it's a heightened deference standard and there must be evidence in the record that the court applied that standard the court didn't even state the proper standard in the record. The court also pointed out to the fact there's a bankruptcy proceeding in Australia the court says you participated in that is that correct? Yes and okay you participated in that now the concern that I have is if you look at this case in terms of bankruptcy you may be correct in your in in your breach of contract action that you are a creditor here you may be correct that you deserve to be paid that you that you indicated that you performed some valuable finder services but you know in bankruptcy nobody no no creditor or few creditors get completely completely satisfied there's creditors claims or are subject to priority they have to be content in many cases with a partial recovery and if I put up if I put on a bankruptcy court lens to this I was concerned that you were trying to jump to the head of the line in terms of the in terms of the state whatever a state a loom loom has but you didn't want to your place in line in that Australia Australian proceeding and if you could come to the United States and just come with a clean breach of contract action you could escape all those pesky little things like the automatic stay and other things that were gonna keep you from a full recovery but what troubled me was in addition to the witnesses the documents and all the rest at the district court listed I was concerned that this might to some extent significant extent be a bankruptcy matter in which you voluntarily for which you participated and that you are now trying to circumvent the bankruptcy proceeding in Australia and have and wage your own little proceeding here in the United States and jump to the head of the line and not have your own your claim subject to 962 D or whatever the automatic state provision is and and to say that the that in this context that the abuse of that the district court abused its discretion under a totality of circumstances inquiries as it strikes me as a rather dramatic thing that you're asking us to do you may be right I don't know but it I've had these qualms about what you're what what you're saying I want you to put me at ease your honor I'm out of time but if I may I would like to put you at ease the so so to actually to understand what was going on when a loom filed this lawsuit there was a process going on yes there was a voluntary administration proceeding because a loom limited was insolvent there was at that time a process by which the administrators were going to sell the company to a new investor that was going to come in and pay 50 million dollars right to bring your own little lawsuit in in the United States when you participated in Australian bankruptcy proceedings and now you wish to be rid so your honor Tiber Creek's position is that the party that owes it money is a loom USA that's our position that company is a u.s. they are not in bank not they're not in bankruptcy we filed the lawsuit it was in response to some some pre early motion skirmishing where we realized that a loom USA was going to take the position that that would they were not the proper party to the case in a loom to you're not seeking money from a loom limited exactly you're seeking a declaration that they probably induce these contracts correct right and so if you prevail in both of these suits the result of that would be that a u.s. company would have to pay its u.s. contracting party for having done u.s. work in order to get u.s. government funds and then in Tiber 2 what would happen is nothing with respect to the bankruptcy proceeding and a loom limited would pay no money and it would have no impact on a loom limited bankruptcy because the results of Tiber 1 would have showed that you're not involved in the bankruptcy proceeding correct and so prevailing if we consider you prevailing as part of this calculus in trying to determine whether the bankruptcy would be affected there's no world that you prevailing leads to a consequence in the in the actual bankruptcy proceeding that is exactly correct and if you lose let's imagine you lose both cases well in that case you also are not going to get money from a loom limited because you have no right of recovery exactly right and so whatever in the world happens here in the United States where a u.s. company contracted with a u.s. subsidiary to do u.s. work to get u.s. government funds whatever happens here it is not going to pull money out of an Australian bankruptcy yes right and so the question is the obvious softball question is why in the world do we think the Australian bankruptcy proceeding has a single thing to do with whether this is the proper form it doesn't it has nothing to do with it and the only thing I would add to what you just said judge Richardson is that in a loom one even before a loom limited was part of the second case there's a claim in a loom one that says to the extent the Australian bankruptcy court award some money based on that proof of claim that the administrators asked Tyber Creek to submit if they do that it will reduce a loom USA's I don't think so your honor I don't I hope I'm not I so it's it's it's hard to keep track of sometimes but our beef you set either of those entities up no we do right these are these are shells that are created by a loom right they yes two companies yes created by a loom correct thank you your honor so you're conceding that the filing after the judgment informing the court that the there was no money in the bankruptcy state this is a state is irrelevant because you're not getting money yes there is no money you're conceding no money you're conceding that point you filed something you you appealed saying the district court was wrong to reject that but you're you're conceding now it was correct to reject that because the bankruptcy estate is irrelevant I think that's correct that yes I'll just I will say yes I think the court should have considered that evidence but I don't think it matters if that answers your question all right so that's different from your brief it doesn't matter because the bankruptcy estate is irrelevant to the extent that the court fought the possibility of a double recovery motivated going to Australia the court should have understood that Tiber Creek was going to get nothing let alone a double recovery and we now know that to be true that they're gonna get nothing they've gotten nothing they haven't heard from the administrators since June of 2023 thank you all right let's hear from the other side here and mr. Reese good morning your honors Stephen Reese on behalf of the appellees judge Wilkinson we agree with you that the district court did not abuse its discretion or that this is an abusive discretion standard and when the district court determined that this is an Australian matter for the Australian courts to decide that wasn't an abusive discretion and this court applies substantially we start there right you this is an Australian matter for Australian courts to result to resolve and that obviously weighs heavily in the public factors as to the local interest can you give me any example where a with two American parties about work done in America to get American government funds and the court has said that we shouldn't try it here we should go somewhere else is there any such case that you can can think of that I should should read or even a case where like the contract is an American contract between two American companies to do work in America any such case where we've said that a domestic company can't come to federal court and get relief as there any example I can't think of an example at the moment your honor but what's relevant here is that the judge didn't address this because it's a 12 v 6 argument but this isn't a contract between two American companies totally get that argument right but we have a district court who's supposed to be making a predictive judgment right and so if if you're right if they got the wrong counterparty the case is dismissed right and it's going to be if they got the wrong counterparty is dismissed without any litigation that's going to impose no convenience problems right so if you if you're right about that argument then there's certainly no convenience here in America right because the case will be immediately dismissed right on a 12 v 6 right it only has any convenience issue if you're wrong and in fact this is an American company involved with American dealings about American money well your honor to even determine that point you would have to look to Australian witnesses and Australian documents the 2020 letter agreement that is the basis of Tiber Creek one is a letter from Tiber Creek wait just so I understand you're saying you would have to look to Australian because Australian company under your view of the world came to America and employed an American company to get government dollars and because they did that we got to go to Australia to decide whether there was a contract between these two parties like they right but you know loom wanted American dollars let me hear from counsel right your honor it was Tiber Creek who reached out to a loom in Australia the 2020 letter agreement is addressed to a loom in Australia yes a loom wanted US dollars and needed a US subsidiary to contract with the US government but the evidence shows that the 2020 contract that's the basis of Tiber Creek one is a letter on Tiber Creek letterhead to a quote-unquote loom it doesn't specify a loom LTD versus USA in Australia now the CEO of both of these entities was in Australia yes dr. Parsons is an Australian both limited and USA yes then further argument is that they didn't sue the correct entity because the contract this 2020 letter agreement is with a loom LTD and there's several pieces of evidence that support that including that then in 2022 you you agree that the district court at the forum stage doesn't resolve that question yes he doesn't need to but he does look at where the evidence and where the documents located that we would need to determine where would be convenient for litigation where would serve the interests of justice and not only are the witnesses and documents with the exception of Tiber Creek in Australia but as you discussed previously Tiber Creek injected itself into the Australian bankruptcy proceedings to recover the same amount of money that it then sought in Tiber Creek one it injected itself into the Australian proceedings it was convenient for it to do so it had agreed to several forum selection clauses dating back to 2014 and then again in 2022 agreeing that Australia is a convenient forum for its litigate its disputes the 2014 forum selection clause just to ask a question about it did even if I assume that that agreement remained the non-disclosure agreement remains in effect do you think that form selection clause governs anything other than the breach of the non-disclosure agreement so if they like published your confidential information then the 2014 non-disclosure agreements selection clause would govern right but is there a reason to think that it would govern the 2020 agreement that doesn't include a form selection clause you see what I'm saying it governs a breach of that agreement not a breach of any agreement in their relationship here to for to come I understand the 22 agreements are different but I'm just talking about the 2014 I understand you your honor and the 2014 agreement that indicates that as of 2014 at least Australia was convenient forum for Tiber Creek to litigate disputes around the breach of the NDA and it's our position to that the 2020 letter agreement incorporated by reference the forum selection clause from that 2014 NDA and thus any disputes around the 2020 agreement were also governed by that forum selection clause and then again your honor there's the 2022 forum selection clauses in the deed of variation and the agreement for services which is the dispute in Tiber to correct well it's a disputant in Tiber Creek to because they say that it was procured by a fraud but it also is highly relevant to Tiber Creek one because it in those 2022 agreements the parties agreed that the 2020 agreement was between Tiber Creek and a loom LTD and the question is whether that was fraudulent right I mean that that's just a circular piece right get that the point is I think I got no idea about what really happened right I'm not don't take my statements here to be a suggestion of like a view on the merits but the suggestion is is like a loom put all those in because they understood what was happening here and we're trying to defraud Tiber of the money they were entitled to under the agreement right and so they they they understood what was happening they had good lawyering and so they you know manipulated the system fraudulently to deprive Tiber of its money that's the argument your honor but the witnesses and documents necessary to assess that are in Australia it's incorrect as Tiber Creek argued that all the witnesses for Tiber Creek one are located in the United States dr. Parsons who the 2020 letter agreement was addressed to it was addressed to him in Australia he's in Australia and the individuals involved in negotiating you aware of any instance in which you know same question from earlier but in the fraud context where a foreign company doing business with a with an American company defrauds the American company in in the process of doing American work and that that's been dismissed for forum grounds I mean in all the cases that I've seen what the courts look at is where are the victims right and and where was the the underlying action taking place maybe you want to look at where the fraud took place but the fraud was directed into the United States I mean that are you aware of a case where we've said that again your honor I can't think of a particular case on all fours with that context but you know in the motion to dismiss stage we also raised a 9b argument that fraud hadn't been played with sufficient particularity and that there wasn't reasonable reliance partly because Tiber Creek is a sophisticated entity itself it's also a government mr. clergy's a sophisticated government contracts lawyer and the district court you know use its discretion to weigh all these different factors to weigh you know where's the bankruptcy where are the witnesses didn't really weigh the factors because it said every factor favors you right I mean including the like local interest in resolving an American companies dispute with another American company about an American contract to get American dollars he the district court found that that factor favors Australia right so he didn't weigh the factors it said all the factors go the other way which it just strikes me as like an implausible conclusion and I take judge Wilkinson's point we are highly deferential to district courts right but but there is an abuse of discretion standard and it doesn't mean that it can never be met if we adopted a review that we can never overturn a forum case for abuse of discretion we just wouldn't do the review right yeah I think that's correct your honor that it's not that that standard can never be met but it wasn't met here and I think it's incorrect to say at the district court I'm a permitted just a second my friend I'm interested in who initiated the relationship there's already between Tiber Creek and loom did which one of the parties initiated the whole relationship between the two I mean your honor we didn't get into extensive fact discovery here what I think what I'm interested in is the degree to which Tiber Creek itself of veiled itself of Australian the Australian court system and an Australian law we've already pointed to one thing which is the Tiber Creek participated in the Australian bankruptcy another thing and I correct me if I'm wrong here but I thought that the parties in their contractual relationship it's always a question of which contract that there was a choice of law decision made and that there was a forum selection decision made and were the choice of law was the choice of law decision made with respect to Australian law and the choice of forum made with respect to an Australian court in the contractual relationships between the parties so I want to understand the degree to which Tiber Creek availed itself of Australian witnesses or also of Australian law of an Australian forum of the Australian bankruptcy tell me the degree to which because your opponent is characterizing this as a you know something where the Australians reaching in and and doing this with respect to American companies and everything the other danger is we can get into a little too much home cooking and I just want to know what to what degree Tiber Creek availed itself of Australian forum and an Australian law as well as the Australian bankruptcy proceeding yes your honor so in 2014 the parties had a prior business relationship and that was between a loom LTD the Australian company and Tiber Creek there was no loom USA at the time that agreement was set forth in a letter agreement that's very similar to the 2020 letter agreement it looks similar it's on Tiber Creek letterhead and has a mandatory forum selection clause in Australia then there's a 2020 letter agreement again addressed to a loom in Australia addressed to dr. Sean Parsons in Australia with it doesn't specifically mention forum selection clause but we take a position that it's the 2014 forum selection clauses incorporated by reference then in June of 2022 Tiber Creek executes multiple agreements that contain Australian forum selection clauses and also specify that the 2020 agreement was with a loom LTD then a loom LTD entered voluntary administration at the end of August 2022 and Tiber Creek submitted a proof of debt in October of 2022 in Australia Tiber Creek submitted a second proof of debt in December 2022 Tiber Creek also voted by proxy in the voluntary administration proceedings in Australia that there were multiple proceedings in Australia the Tiber Creek participated to some degree in and that there were you're saying there were multiple agreements executed with the forum selection clause in an Australia law or an Australian forum and that there were choice of law provisions and agreements at Tiber Creek executed because I think that's an important factor because um to the degree that the parties choose forum selection clauses and choice of law provisions they have control over their contractual relationship and that is likely to counteract to some extent the pure presumption of a plaintiff's choice of forum see what I'm saying that's correct your honor and we agree we think that that evidence is really strong evidence that Australia's convenient forum and if you look at the district court's opinion the district court it's incorrect to say that the district court didn't recognize the heightened deference that's owed to plaintiff's choice of forum the district court explicitly did but it nonetheless balanced the different factors here it noted that there might be inconveniences on both sides but it nevertheless held that the balance of convenience weighed in favor of Australia even acknowledging the heightened deference owed to Tiber Creek's choice of forum what you're saying here is that the center of gravity of the party's relationship could be seen by the district court to be in Australia and that part of the evidence supporting that of a number of executed agreements with choice of law and forum selection procedures that point to Australia exactly now the response that they're giving to that is well yeah but this was the other set of contracts and this was this was with a loom LTD and not or this was you know the separation between a loom LTD and a loom USA and all the rest and so we've thrown up with these different contracts and and everything but I wonder if it's not all part of a continuing relationship between a loom and whatever form it is in and Tiber Creek and and whether the the by the party's own choice Australian law and on Australian forum was devised and this was and the Australian bankruptcy proceeding was one in which they participated so I'm just I'm just concerned about you know there might be a little bit of you know I might be too much home cooking going along and I'm also worried about a shell game given all these different contractors good could you respond to that I mean we agree your honor that all those factors the contractual relationship dating back to 2014 with a loom LTD the forum selection clauses that the party's repeatedly agreed to the participation in the Australian bankruptcy we also share your concern your honor that Tiber Creek attempted to jump the line of the Australian voluntary administration proceedings once it realized that it might not recover all that it was owed in the Australian bankruptcy proceedings it initially injected itself into the Australian bankruptcy proceedings in against a loom LTD for about nine million dollars and after a deed of company arrangement was drawn up partly through Tiber Creek voting by proxy to agree to when the creditors agreed to enter into this deed of company arrangement that would govern the bankruptcy that's when Tiber Creek then turned around and sued a loom USA for the same nine million dollars trying to recover what it was owed yeah can I ask a question back to judge Wilkinson's original question as to who initiated the relationship I thought I heard you say that the original agreement between these two parties was on Tibers letterhead but but when I look at and I'm at JA 73 which is the the nondisclosure agreement which I believe is the first agreement between them that's like an a loom document right it's like I think fairly evident from the document that that's you know a looms nondisclosure agreement are you aware of an agreement before that time or is that the first agreement that exists your honor I would point you to JA 526 it's attached as a declaration to John Clarici who's the principal for Tiber Creek that's the 2014 letter agreement between Tiber Creek and a loom LTD again there's that came after the nondisclosure agreement which was in November of 2013 which is on page 73 yes that's correct your honor what I'm asking is what's the first agreement right the first agreement is the nondisclosure agreement which is on the which is a looms document Matt I'm not sure this is crucial I just won't make sure I understand the first agreement is the one that's about page 73 I just turned to page 600 and something but right that's a looms own document it's their nondisclosure agreement your honor I see I'm on time can I answer the question yes as far as the record is concerned and acknowledging that we gone into full discovery here that is that does appear to be the first agreement but one party signed in 2013 another party signed in 2014 that's when dr. Parsons executed it if you look at JA 076 that's a nondisclosure agreement and then there's the full letter agreement outlining the scope of work the starts on JA 526 discovery in this case going to proceed if we were to reverse the district court what about what about all these witnesses that are were listed by the district court as being in Australia is the district is that part and parcel of another suit or the other is a district court going to be able to compel discovery from these witnesses your honor understanding is that in terms of Australian witnesses and Australian documents the district court won't be able to compel pretrial discovery there's no subpoena power and under as Australia has signed the Hague Convention there's no ability to get the sort of pretrial discovery that we would expect in the u.s. and even if this court were to disagree with us and remand there's still you mentioned the kind of myriad threshold issues that we want to avoid there's still many more threshold issues to address there's our 12 v 6 argument there's a personal jurisdiction question with respect to the Australian defendants a loom LTD and dr. Parsons there's a potential bankruptcy proceeding under chapter 15 if the administrators of the of a loom LTD if we were to reverse what would we be left with a lawsuit that can't go forward I think it'd be incredibly burdensome to go forward if at all as judge rushing you noted the inconvenience on the witnesses even if they were willing to engage in litigation is an important factor they're gonna say well no but you're missing the fact that these are two two lawsuits and this other one can go forward you know this is what this is why I continue to be concerned about the shell game because it does seem to me that basically with with whether you're talking about one suit or another you're talking about the same two basically the same two contracting parties are you not yes your honor our position is that both cases rely on the same witnesses the same facts the same documents and those witnesses and documents are in Australia wouldn't it be wouldn't it be we talk about convenience would it not be more convenient to have all of this located in in in one forum we agree and we believe that the district court properly use its discretion to decide that the proper form for that you know because even if we reverse here that wouldn't stop the Australian procedures with it that's correct there's still a liquidation proceeding going on for a loom LTD and Tiber Creek has not withdrawn its claim as an unsecured creditor so we could find ourselves in a total mess yes your honor and we believe that the doctrine of foreign inconvenience is designed in part to avoid this sort of mess that's that's um that's what concerns me is it this this could be chaotic and there'd be more fights here and there over which set of agreements control and which entity was was involved and which witnesses could be compelled in which suit which couldn't and it what what lies what lies ahead is a mess and the district courts thinking is given the choice of law provisions and given the selection clauses and given the fact that the Australian administration proceedings are moving forward and giving the fact that there are many witnesses documents and everything in Australia that it makes some sense to bring it all together between these two parties and have the same forum separating it out and and and dealing with this in a holistic fashion rather than in a fragmented fashion that goes across the globe we agree your honor and we believe that that's a very good reason to affirm the district courts you know the thing is oh yeah but these are separate suits and if this one have I'm not convinced that all this is all that separate and neither was the district court your honor he consolidated the two cases and to keep repeating the phrase all the documents the witnesses they're interrelated between the two cases and yeah we agree with that position your honor thank you thank you very much I addressed a couple of couple of points that you raised judge Wilkinson first thing there was a question about who initiated the relationship I don't think that really matters for purposes of forum nonconvenience but I do want the record to be clear there was a pre-existing relationship that goes back to 2013 2014 that time frame it when the later in 2020 after COVID shut everything down and the government was looking to find ways to deal with that crisis the principal of Tiber Creek contacted dr. Parsons and talked about some of the government funding that was available you had to at that time that particular government funding was only going to American companies at that point the loom limited had already created the loom USA subsidiary here in the u.s. and the conversation was to explain that because you have this American company you can apply for these funds and that's that's how that's how they helped why don't we take all these different agreements all these different corporate organizations or entities and have them have all of the proceedings surrounding the relationship between the parties the various agreements the parties have signed the various amendments to the various agreements the witnesses whose recollections may overlap from one suit to another why don't we bring them together in a single forum and that's what the district court I think was aiming at and who wanted the proceedings he wouldn't know it would put the district court in one heck of an awkward position to send this this part of the case there when there's there's an overlap between all of these different agreements and amendments and everything I think it's hard it's hard to parse it all out up here frankly I respectfully I totally disagree that the loom limited is only in the case because it needs to be a party because we're asking to have an amendment declared void ab initio and we cannot bring that claim unless a loom limited is in the case if that case gets moved to Australia it stops and we're not looking for money from a loom limited anyway there's no reason to take to throw the baby out with the bathwater and the I don't think there's any reasonable argument that the dispute between two American entities brought in the plaintiff's home forum should go forward in that home forum but you were letting the tail wag the dog and I don't even think it matters because nothing is going forward in Australia against a loom limited nothing would go forward in here against a loom limited if they only would follow the proper procedure and get that bankruptcy recognized which they still haven't done in the US bankruptcy courts that's your that's your projection I'm just I'm just I'm just wondering whether it's all going to be a sort of neat and sound and compartmentalized as you would like it your honor if I can just I want to hit a couple of things you raised a couple of questions I want to address them there's been a reference to forum selection clauses there are no forum selection clauses there are clauses that say Tiber Creek cannot challenge Australia if it gets sued in Australia it cannot sue challenge that based on inconvenience so yes Tiber Creek waived that if it is sued in Australia that does not mean everything has to be brought in Australia it's a non-exclusive forum selection clause which by its nature contemplates litigation in other places so that that should not weigh one one way or the other in a forum non convenience analysis the there is a question about choice of law there was no choice of law in the operative 20 quite differently we're gonna throw all this back on the district judge the judge the district judge should have addressed this he should not have dismissed this case it was an abuse of discretion I stand by that it was I think your own cases this circuits own cases make that in my view crystal clear I don't even think it's a close call I answer your questions I'm sure he was not relishing the thought of dealing with two litigious parties and all of their disputes but it was his obligation to do so your honor I'm running out of time choice of law point the choice of law point is that this court I mean confronted that in the D Federico case itself in the in the court stated the need to apply foreign law is not in its in and of itself a reason to apply the doctrine of forum nonconvenience and we must guard against an excessive reluctance to undertake the task of deciding foreign law a chore federal courts must perform often that was a that was a court was this court was relying on the Second Circuit for that but but that should not be a reason and we're just we're talking about whether a contract procured by fraud is is void have an issue there's no difference in the law between here and there there's selection clauses shouldn't be a reason there's no forum selection clause the the choice of law issue is whether under Australian law that deed of the variation is you obviously have some differences of opinion about that the only reason I thought forum selection clauses and choice of law clauses were important is that they allow the allow the parties to control their relationship and that's part of the whole purpose of the law contracts and now you say there was and you say there wasn't that they say that you know that you say there weren't those clauses they say they they say they were this there's a lot to untangle here well your honor I see my time is out if I can just close with two things first of all I'm a Philly lawyer it's been a pleasure to be down here in the Fourth Circuit my in closing the the principle that I think that we get from de Federico is not just it's not just a standard that the court should apply but the principle is that an American citizen should not be denied access to course of the United States except in very rare circumstances and I submit this is not one of those cases that rises to that level thank you very much okay thank you we will come down three counsel I'll ask you all to come up and we'll proceed into our last case
judges: J. Harvie Wilkinson III, Julius N. Richardson, Allison J. Rushing